UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 3:25-mj-121-HTC

CARLOS ROBERTO
OSEGUERA-MONCADO,

    Defendant.
_____/

## AMENDED ORDER OF RELEASE

Defendant is charged in a complaint with illegal reentry into the United States after being deported or removed in violation of 8 U.S.C. § 1326. At Defendant's initial appearance, the Government moved for detention under 18 U.S.C. § 3142(f)(2). The Defendant requested a detention and preliminary hearing, both of which were held on April 16, 2025.

**I.    Probable Cause**

Defendant argues the Government has failed to establish probable cause that he engaged in a violation of 8 U.S.C. § 1326 because the Government has not produced a copy of a deportation order from an immigration official for the Defendant to confirm that he has been deported. Defendant further argues Homeland Security Investigations ("HSI") Special Agent Brigham's sole reliance on databases, which are inherently flawed, to show Defendant is not legally in the

1

United States and has previously been deported is insufficient to establish probable cause. The Court disagrees.

First, the Defendant presented no authority, and the Court has found none, establishing the immigration databases or records relied upon by Agent Brigham are inherently flawed. To the contrary, in *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 819 (9th Cir. 2020), the circuit court reversed the lower court's categorical determination that immigration databases are unreliable for determining probable cause of removability. Moreover, in doing so, the court recognized that "the government may rely on a computer database to make a probable cause determination." *Id.* Thus, although Defendant argues the immigration database relied upon by the Government was unreliable, he has not presented any evidence of such.

Second, probable cause is a "fluid concept" and "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* It "deals with probabilities and depends on the totality of the circumstances." *Id.* Here, looking at the totality of the circumstances, the Government introduced an Immigration Detainer – Notice of Action, executed by Deportation Officer C. Vu, indicating that the basis of the detainer is that a final order of removal was entered against Defendant, that biometric information confirmed the Defendant's identity,

and that there exists statements or other reliable evidence affirmatively indicating Defendant lacks immigration status and is removable. *See* Gov't Ex. 2. The detainer packet also includes a denial of Defendant's application for a work visa and a denial of Defendant's application for temporary status in 2002. Additionally, when Defendant was pulled over by the Gulf Breeze Police Department in April 2025 for a traffic citation (resulting in his subsequent federal arrest), he provided officers with a Honduran Passport. *See* Ex. 1. Thus, based on the totality of the circumstances, the Court finds probable cause that Defendant was deported and returned to this country without permission.

## II.   Bail Reform Act, 18 U.S.C. § 3141 *et seq.*

Having determined probable cause exists, the Court will now turn its attention to the issue of pretrial detention. Because illegal reentry is not one of the enumerated crimes for which pretrial detention may be sought under § 3142(f)(1),[1] the Government moves for detention under § 3142(f)(2)(A). To succeed on its motion, the Government must establish, by a preponderance of the evidence, that there is a serious risk Defendant will flee. *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990); *see also* 18 U.S.C. § 3142(f)(2)(A). If the Court finds the

---

[1] Under § 3142(f)(1), the Government can seek detention based on risk of nonappearance or danger to the community.

3

Government has met that burden, then the Court must consider whether detention is warranted under § 3142(g).

### A. Risk of Flight

The Government argues Defendant is a risk of flight or nonappearance because he has an ICE detainer. The courts are divided on the impact of an ICE detainer on the pretrial detention analysis. Some courts agree with the Government and have ordered detention, finding that when a defendant is likely to be deported if released, there are no conditions which may be imposed to reasonably assure the defendant's appearance. *See United States v. Hernandez-Saldivar*, 2022 WL 447893, at *3, n.7 (N.D. Ala. Sept. 26, 2022) (collecting cases). Some courts, however, have concluded that "risk of nonappearance" as used in the Bail Reform Act requires voluntary action by the defendant. *Id.* And there are also those courts that have found ICE detainers weigh in favor of release because the defendant cannot flee while in ICE custody. *Id.*

Here, the Court will consider Defendant's likely removal upon release as only one factor in evaluating the risk of flight. *See United States v. Cobix-Espinoza,* 655 F. Supp. 3d 584, 596 (E.D. Ky. 2023) (citing *United States v. Adomako,* 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001)).

The Government also argues Defendant is a risk of flight or nonappearance because he has a history of failing to abide by the prior deportation orders and the

4

law by getting numerous traffic citations since 2014. The Court does not agree. The Court does not see the connection between driving without a license and a risk of flight or nonappearance. To the contrary, the records submitted by the Government related to the traffic citations show Defendant appeared for court when required to do so. *See* Gov't Exs. 3-7.

Considering the evidence in the record, including the additional evidence received during the detention hearing, the Court does not find a serious risk that Defendant will flee. Defendant is 55 years old and was born in Honduras but has been living in Fort Walton, Florida, for 20 years. Although Defendant has elderly parents and two brothers who still reside in Honduras, his wife of 35 years and 3 of his adult children live in Fort Walton. Defendant also has two other adult children who live outside of Florida, one in California and one in New York, both of whom are in the armed forces. Defendant's wife owns the residence where Defendant, his wife, and an adult son reside. Moreover, Defendant's maximum sentence in this case of 2 years of incarceration is not significant.

Even if the Government had shown by a preponderance of the evidence that Defendant was a serious risk of flight, for the reasons discussed below, the Court finds the § 3142(g) factors weigh in favor of release under the facts and circumstances of this particular case.

## B. Bail Reform Act, § 3142(g) Factors

The Bail Reform Act, 18 U.S.C. § 3142, lists the factors a court must consider when deciding whether to release or detain a defendant. 18 U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." *Id*.

### 1. Nature and circumstances of the offenses charged

First, the Court considers the nature and circumstances of the offense charged. When considering the nature and circumstances of the offense, the Act instructs a court to consider "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, Defendant is charged with illegal reentry, which does not fall into any of those categories. Also, as discussed above, the maximum penalty Defendant faces if he is found guilty of the charge is minimal.

### 2. The weight of the evidence

Next, the Court considers the weight of the evidence. This factor concerns the strength of the Government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188

6

F. App'x 822, 830 (11th Cir. 2006). Here, for the reasons discussed in Section I, above, the Court believes there is strong evidence that Defendant committed the offense for which he is being charged.

C.   **The history and characteristics of Defendant**

The Court is also required to consider the history and characteristics of the Defendant. As stated above, Defendant is 55 years old, reports to have been married for 35 years, and has 5 adult children, all of whom reside in the United States. Defendant reports living in Fort Walton for more than 10 years. Defendant is self-employed as a handyman and makes approximately $2,000 a month. Two of Defendant's long-time friends, Mr. Martinez and Mr. Hernandez, testified on his behalf, and confirmed his relationship with his family as well as his ties to the Fort Walton community, including the length of time he has been there, that at least one of his children lives there, and that he works and goes to church there.

As for Defendant's criminal history, according to the pretrial services report, aside from the two deportations, Defendant's criminal history consists of 3 driving without a license charges, including the charge that resulted in this federal arrest. The Government, however, introduced evidence showing Defendant has had 5 additional driving violations: (1) a 2014 driving with an expired license conviction (Gov't Ex. 3); (2) a 2015 driving with an expired license conviction (Gov't Ex. 4); (3) a January 2020 driving with an expired license conviction (Gov't Ex. 6); (4) an

October 2022 citation for a redlight camera violation; and (5) an October 2023 citation for running a stop sign.

The Government argues this history shows Defendant is unable and unwilling to follow the law. The Government also argues during at least two of the traffic stops, Defendant gave officer's someone else's Texas driver's license (*see* Gov't Ex. 10), and on another occasion, told the state probation officer that he was legally in the United States on a work visa, which was false.

The Court agrees the Defendant's driving history is problematic; he does not have a license and should not drive. However, minor traffic offenses are certainly not the type of offenses that generally result in the denial of a defendant's freedom prior to an adjudication of guilt. As the Supreme Court has stated, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As for whether Defendant has given law enforcement false information in the past, the Court finds the evidence presented by the Government to be insufficient for the Court to make that inference.

The basis of the Government's belief that Defendant gave law enforcement driver's license information belonging to another person is because two of the citations reference a Texas driver's license number that does not belong to the Defendant. The Court notes, however, that the numbers are off by one digit only – the last four digits of the driver's license number on the 2014 citation and the January

2020 citation are 7129 (which does not belong to Defendant) while the last four digits of Defendant's expired Texas driver's license number was 7179. The difference in the "2" and the "7" could have simply been an input or transcription error. As the Defendant argues, it makes little sense if Defendant is trying to provide a false identity for him to give his real name, which is the name identified on all the citations.[2]

As for the Government's contention that Defendant falsely told state probation officers in 2017 that he was working in this country on a visa, the Court likewise finds the evidence presented to be insufficient for such an inference to be made. The Request to Modify Probation (Gov't Ex. 5) does make that representation, but the representation was made by the probation officer, not by Defendant, and it is unclear whether the probation officer may have misunderstood Defendant's immigration status or if that information even came from Defendant.

**D. Nature and seriousness of the danger posed by release.**

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. The Government argues Defendant is a danger to the community because two of the

---

[2] Moreover, based on the citation affidavit for the January 2020 citation, the officer conducted a "search of the Defendant's name and date of birth through Okaloosa County Dispatch which yielded a Texas driver license 20367129." Gov't Ex. 6. This indicates the information did not come from Defendant.

9

traffic citations for not having a driver's license or having an expired license occurred as a result of a vehicle crash. *See* Gov't Exs. 3 & 6. The Court disagrees. There is no indication either crash resulted in injury. Also, there is no indication Defendant was driving in an improper manner. In fact, other than not having a license, Defendant was not cited in either case for a moving violation.

### III.  Conclusion

A court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985) (the policy of the Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant"). Here, given Defendant's criminal history and his significant ties to the Fort Walton community, the Court finds it can reasonably be assured of Defendant's appearance[3] and the safety of others by imposing certain conditions on Defendant, including GPS monitoring with home detention and a no driving at all condition.

---

[3] Although a few courts have prohibited ICE from removing a Defendant until criminal proceedings have ended, as the Northern District of Alabama noted, that "approach raises questions about the court's authority (not to mention judicial modesty) and has been rejected by every circuit to consider the issue." *Hernandez-Saldivar*, 2022 WL 4474893 at *3, n.7.

Accordingly, IT IS ORDERED that Defendant shall be **released** once the U.S. Probation Office has affixed a GPS monitoring bracelet on Defendant *and* Defendant's release shall be subject to the conditions set forth in the attached conditions of release.[4]

**DONE AND ORDERED** this 17th day of April, 2025.

*s/ Hope T Cannon*
Hope T. Cannon
United States Magistrate Judge

---

[4] If the ICE detainer is enforced, the GPS monitoring condition shall not apply while Defendant is in ICE custody. Should Defendant subsequently be released from ICE custody, Defendant shall immediately notify the U.S. Probation Office of his release from ICE custody so it can affix a GPS monitoring bracelet.